v. Davis. The next case on the docket is number 5 18 0442 people versus Davis. Arguing for the appellant. Apollo Davis is Gilbert Lentz. Arguing for the appellate people of the state of Illinois is Valerie Osmond. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Mr Lentz, you may proceed when you're ready. Thank you very much, Your Honor. Yes, my name is Gilbert Lentz, and I'm from the Office of the State Appellate Defender here on behalf of Apollo Davis. Good morning, Your Honors, and good morning, counsel. Initially, I'd like to say I'd like to apologize in advance if there's any background noise. They're doing construction on my street, so you may hear some noise in the background there. As you know, Your Honors, Mr Davis has raised five arguments in this court, two of which focus on sentencing, and I'm happy to discuss those if this court wishes. However, I'd like to focus this morning on the arguments requesting a new trial. Your Honors, this trial was riddled with error, from the judge's denial of Davis's motion to sever the unlawful use of a weapon by a felon charge, to counsel's failure to file a motion to sever the three unrelated burglaries from each other, to the state's solicitation of example after example of improper testimony from a detective that Davis was a suspect in other multiple uncharged burglaries, that two detectives knew Davis prior to his arrest in this case, and when a detective testified that police were called to Davis's home multiple times prior to this arrest. The state also improperly bolstered its own evidence when two detectives testified that Davis's unrecorded statements were actually more credible and more truthful than if they had been recorded, and when one detective identified Davis in the trail camera photograph, where his familiarity was no better than the jurors with Davis. Your Honors, any of these errors could be a basis for a remand, but the combined effect of all these highly prejudicial errors denied Davis a fair trial. Your Honors, these cases, and plural, I mean these cases should have been about whether Davis was guilty of each separate burglary charge, but instead combining all of these charges into one trial, and adding on top of that all of the improper prejudicial evidence, may create an intolerable risk that this trial was more about Davis's was guilty of each individual charge. This court should have no confidence that the convictions here were based only on the proper evidence, and it should remand for a new trial. I'd like to turn now to argument one concerning the UUW felon charge. As the court knows, the state charged Davis with five different counts, three burglaries plus two gun charges related to the same gun. Among those five, the least serious of all was the UUW felon charge, but because that charge required the state to present a prior conviction, and allowed the state to inform the jury that Davis had a prior conviction, counsel recognized the prejudicial effect of that, and filed a motion to sever that count, and despite the fact that the judge had just found that introduction of a prior conviction was so substantially prejudicial that he denied the state's request to impeach Davis with a prior conviction to be testified, the judge denied counsel's motion to sever the UUW felon count. That was an abusive discretion, and the state cites no case where such a denial of a motion to sever a UUW felon count was not error. Turning to the prejudice prong of this, it's important to note here that this claim is preserved, so the burden is on the state to show in this court that the error was harmless. The state's prejudice argument primarily concerns the fact that the jury was only informed that Davis had a prior felony conviction rather than the name of that prior conviction. The fact that the jury heard the name of the prior conviction, the key is that they heard about a prior conviction, and the third district recently confirmed this principle in their decision last week in Howard, which we cited as additional authority. In that case, the jury, like the jury here, only heard about a prior conviction, not the name of it, and I think equally importantly here, is that the state maximized the prejudicial effect of adding this count to the trial because they didn't limit their discussion of the prior conviction to just as being an element of that offense. The state three times called Davis a convicted felon in front of the jury, once in the opening statement and twice in the closing argument. That's using the prior conviction as evidence of propensity. That was not impeaching him when he testified. That was evidence of propensity, and that was improper use of this prior conviction that should not have been joined in the first place. Moving to argument two, as the court also knows, Davis was charged here with three separate burglaries at three separate locations in three separate months. There's no reasonable argument that these three burglaries were part of the same comprehensive transaction. So under the first prong of the test here, there was already error, but even if these were somehow part of the same comprehensive transaction, the prejudice of combining all three of these burglaries and allowing the jury to hear all of the evidence from all three burglaries, unrelated burglaries, in one trial was just overwhelming, and that's under the second part of this test. Mr. Lenz, what was the evidence of entry in the burglary where he was found with just the gun or just the material? I mean, how did they get the burglary conviction on a possession? The gun was connected to the landfill road, and I'll use the name of the street for each road burglary, and the evidence of entry there was actually accountability. The only evidence that Davis committed a burglary there was his unmemorialized statement that he stood outside the house while a man named Tennessee went inside and took items from the house, including guns, and the residents of that house identified that .38 handgun as being theirs, and that was allegedly found in Davis's apartment. But the only evidence of entry actually was his statement. I believe in that alleged burglary, yes, that's correct. Okay, thank you. Yes, so yeah, under argument two, there was error under both prongs of the test, the same comprehensive transaction and overwhelming prejudice, and there was no reasonable strategy that could have allowed for counsel's failure to try to sever these three unrelated burglaries from each other. I'd like to conclude by discussing argument three, the examples of highly prejudicial improper evidence that was allowed here. Not only did the state present by joining the counts here, not only was the jury presented with what essentially amounted to a lot of propensity evidence, but the state also bolstered its case with additional completely inadmissible propensity evidence when the detective testified that the police found items from separate unrelated burglaries in Davis's apartment and thus declared him a suspect to the jury in multiple unrelated burglaries that were not even charged in this case. The prosecutor also, and this is similar to the Walker case this court recently decided, the prosecutor also asked two detectives at the beginning of their testimony if they knew Davis before this incident, and that of course under Walker is improper police familiarity evidence that was irrelevant to whether Davis was guilty of any of these charges. And finally, one detective testified as he was trying to confirm that Davis lived in the apartment where they found the items. One of the ways he said they confirmed it was him was because he read documents, not even documents that he wrote, but he read documents by other officers attesting to multiple visits by police to what was allegedly Davis's apartment that was also improper propensity evidence. And finally, your honors, in addition to all that propensity evidence, the state improperly bolstered its case with lay opinion testimony, both when a detective identified Davis in the trail camera photograph, when that detective had no familiarity with Davis any more than the jury did. That was really a question for the jury. And two detectives testified that they did not record or prefer not to record statements because suspects in their unqualified expert opinion are less truthful when statements are unrecorded. And that was improper vouching for the unmemorialized statements upon which the state's case really hinged. So for all those reasons, your honor, this court should remand for a new trial. Thank you, Mr. Lenz. Ms. Osmond. Good morning, your honors, counsel. May it please the court. My name is Valerie Osmond, and I represent people of the state of Illinois in this matter, people versus Apollo Davis. First, I'll jump into the defendant's first argument, which opposing counsel address, which is whether the trial court properly exercise its discretion when it denied the the unlawful use or possession of weapons by a felon charge from the other charges for trial. So in this case, before trial, the state filed a notice of defendant's class X offender status, arguing that pursuant to 730 ILCS 5 slash 5 dash 4.5 dash 95 B, if the defendant were to be convicted of residential burglary, a class one felony that he must be sentenced as a class X felony offender based on the defendant's prior felony convictions. Thereafter, counsel for the defendant filed a motion in limine asking for the trial court to prohibit the state from impeaching the defendant with evidence of his prior convictions to be testified. The trial court granted that motion. And then a few or the same day, actually counsel for the defendant filed a motion in limine to sever count the unlawful use of possession of a weapons by felon count from the other charges, noting that in order to prove this charge, the state would have to introduce evidence to the jury that the defendant had a prior felony conviction. The trial court denied that motion. Then a few days later before trial or the beginning of trial, the parties agreed to stipulate that the defendant had a prior felony conviction so that the jury would not hear the nature of that charge. The charges were based in this case on separate acts. The first one was the burglary to the residents located to the 12928 Highway 51 location in DeSoto, a residential burglary to the residents located at the 268 Landfill Road in DeSoto location, and a burglary to the residents located at 1 Unicorn Hill Road in DeSoto at that location. And then the possessing of a firearm, stolen firearm and unlawfully using or possessing a weapon as a felon. Those are five distinct acts. So the question then is whether that last act of unlawfully using or possessing a weapon by felon was a part of that same transaction as the other four. A definitively comprehensive transaction when the burglaries were on separate dates, separate locations. So in Illinois, there is no precise criteria for determining whether separate offenses are part of the same comprehensive scheme. However, trial courts will typically consider four factors, the proximity of the offenses in time and place, the identity of evidence necessary to demonstrate a link between the offenses, whether commission of the offenses involved a common method, and whether the same or similar evidence would establish the elements of the offense. So in People v. Walston, the second district provided some useful guidance in the application of these four factors. The court noted that the first, whether the offenses were close in time and place is probably the most helpful, stating that proximity and time place is one of the two most important factors in the joinder determination. And that's because as events become separated in time and distance, the likelihood decreases that they may be considered part of the same comprehensive transaction. Okay, these events were separated by months, is that correct? Each one had approximately a month in separation, right? The first was August, the second was September, the third was October, the fourth and fifth were both in December. So in this case, the unlawful use of possession of a weapons by a felon charge. At the hearing in September 2017 on the defendant's motion in limiting to sever that from the other charges for trial, the state indicated that the stolen weapon in question, that the defendant was being accused of using or possessing in both counts was a Browning 380 handgun, and that it intended to call witnesses Blake Mola Holland, I don't want to mispronounce that, but I think I got it, and Leslie McComb to testify that the Browning handgun, which was recovered from the defendant's residence on December 14, 2016, belonged to them and was 268 Landfill Road residence, which was the count to charge, that's the link between the two charges there. So as the state put it, Mola Holland and McComb's testimonies relating to the offense charged in count two would lend itself into count five, being the defendant's possession of that stolen firearm, as well as count six. So the offenses here occurred at the same time and location. The defendant admitted to police that he stole that handgun from the 268 Landfill Road location and brought it back to his apartment. As such, there was no error in joining the charges for trial because they were all part of the same comprehensive scheme or transaction. As to the second... Before we run out of time, I'm very interested in the police officer testimony where they were allowed to identify the defendant on the trail camera. Okay. We have People v. Thompson, which talks about police officer testimony and whether they can do that. And in Thompson, it recommends that a hearing be held outside the presence of the jury. Was that done in this case? I don't believe so. Are you familiar with the Thompson case? Is it the 2016 case? Yes. I know I cited it. I'm trying to remember the facts, but... So dealt with police officers giving lay witness opinions or identification testimony. Yes. And they said that may be allowed where there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury. But it also recommends giving a limiting instruction as well as having a hearing outside the presence of a jury so that the defendant is allowed the opportunity to cross-examine the police officers. It's something that's been really overlooked by our state's attorneys in Southern Illinois, this case. Well, in this case, Your Honor, the trial court did give a limiting instruction informing it that the evidence that the defendant was involved in any offenses other than those charged in the indictment was only relevant to the defendant's identification and may be considered by it only for that limited purpose. So the identification that opposing counsel is arguing was easily cured when the trial court did give that limiting instruction. Specifically... What about the other burglaries that they were allowed to testify to? You think that that was acceptable? So are you talking about Officer Bohn's testimony, Your Honor? I'm not sure whether it was Officer Bohn or not, but the officer was allowed to say that he was a  in other burglaries. Okay, so opposing counsel argues that he had to have been referring to uncharged burglaries whenever he testified that. However, the prosecutor or the state in this case didn't ask about uncharged burglaries. They just asked about other crimes. Nothing about Bohn's testimony suggested that the detectives believed the defendant was involved in any uncharged burglaries, as his testimony with regard to the burglaries at other locations could have simply been referring to the burglary at 12928 Highway 51 residence because that one wasn't specifically asked about. However, it was one that was charged in this case. So other burglaries could have simply been referring to that, which was a charge in this case. Well, but the... This is my notes. When he was on a police ride where they were going to the areas of the burglaries, the officer was allowed to testify that they went to other burglary locations and defendant then denied being involved in those. So they went on a ride around to other locations suggesting that they thought the defendant was involved in these burglaries. Yes. He was allowed to testify to that. Do you think that's acceptable? Yeah. Well, okay. So Detective Bohn testified that towards the end of the drive, it became obvious that the defendant was no longer being cooperative and that the burglaries because he had a lot of property from the burglaries and that he was denying being at those locations. And then this exchange took place. The state asked at other locations, question mark, and Detective Bohn said, yes. The state said, but in this interview, he admitted to burglarizing Unicorn Hill Road address, correct? Bohn said, yes. The state said, as well as 268 Landfill Road address, correct? Bohn said, yes. And the state said, and indicated that he had the Browning pistol in his possession, correct? Bohn said, yes. And the state said, I have nothing further. So the other burglaries that he was mentioning in his testimony could have simply been referring to the one that was not specifically asked about, which was that one located at the 12928 Highway 51 residence. Okay. Thank you. Additionally, the detective's testimony regarding the investigation into the charged offenses and the events leading up to the defendant's arrest was relevant and necessary to explain to the jury how and why the defendant was developed as a suspect for the burglaries, all the burglaries in this case, and that is allowed in cases like this. And it is- I'd have to stop you. Your time has expired. Thank you. I know you have lots more to say, but Mr. Lenz, rebuttal. Yes, Your Honor. Thank you. To take the last point first, the question about the detective's testimony about Davis' alleged or being a suspect in other locations. I think the reasonable reading of the testimony there, the only reasonable reading of that testimony is that the prosecutor was actually clarifying, asking the detective to clarify that he was talking about other locations not charged in this indictment. And as Your Honor pointed out, that's clear because at that point, they were talking about locations where Davis was allegedly denying participation or denying committing any burglaries. But the detective then testified he had property from those burglaries where he was denying. So I think it's very clear from the record they were talking about uncharged burglaries there. To your question about the trail camera photograph, Your Honor is absolutely correct. The procedural safeguards under Thompson, which I didn't have time to discuss before, but they were not followed here. And frankly, a hearing here would have showed what the detective testified to, which is he had no familiarity with Davis. That's what the hearing is for. If he has no familiarity with the person, then that testimony shouldn't be coming in. He admitted that at trial. So we know it fails the Thompson test on the first prong. And of course, as Your Honor pointed out, there was no limiting instruction at all about how the jury is allowed to disregard this kind of identification testimony. So that reason alone is a reason to grant a new trial here, because as the court knows, that trail camera photograph was far from conclusive and it was really up to the jury whether that was Mr. Davis or not. To Justice Wharton's question about the same comprehensive transaction, the state's arguing that this was part of the same comprehensive transaction. There's no case saying that three different incidents in three separate months could be part of the same comprehensive transaction. The farthest any court that I know of has gone is about 70 hours. That's the Terry case cited by the state. But even that Terry case is an outlier on this. Most courts have found that same comprehensive transaction requires a few seconds, a few minutes, and within a few blocks or a mile or two. Nothing like three separate locations in three separate months. And if Your Honor, if I could conclude with one point, I want to correct an error I made in my opening brief. When I was talking about the prejudice from all of these different errors, I said that it's true that these kinds of highly prejudicial errors may be reversible error even in the face of strong evidence from the state. But the case I cited for that proposition, the Foltz case from the second district, actually does not say that. It still stands for the principle that even sufficient evidence where it's closely balanced requires reversal. But I think this is not harmless or not closely balanced in the face of such prejudicial error. And I'd point the court instead to the Carriker case where the defendant actually made recorded statements in culpatory statements. So the state had very strong evidence there, but the court still remanded for a new trial in light of improper joinder. And similarly, the Johnson case where the court actually reversed a UUW felon count itself for a new trial where the state had strong evidence. They only had the two elements to prove, but the court reversed on that count because the jury heard prejudicial evidence of prior domestic battery convictions, which the court found as prejudicial on the UUW felon count. So with that said, Your Honor, if there are no further questions, we would ask that you reverse Mr. Davis's convictions and remand this for a new possible ineffective assistance counsel. That is the failure of trial counsel to move for severance of the burglary charges themselves. And that this may have been part of some trial strategy, all or none, the belief that it was much better to proceed with three charges rather than have them tried individually. Could you address that? Yes, I'd be happy to, Your Honor. I think the point there is really threefold. There's no, well, first of all, I would say there's no evidence in the record that, and if I could have more time, Your Honor, I'd appreciate it to answer this question. Answer Justice Wharton's question, yes. Thank you. There's no evidence in the record, affirmative evidence in the record that counsel here chose an all or nothing strategy. That's first point. The second point is the record actually shows that counsel did not choose an all or nothing strategy because he moved to sever the UUW felon count. So he was already contemplating two, possibly two separate trials here. So we know that he was, this wasn't an idea of trying to do all this in one trial. And, but maybe most importantly, Your Honor, even if counsel had chosen an all or nothing strategy here, that choice, the record demonstrates, this record demonstrates that that choice was unreasonable due to the overwhelming prejudice of having a single jury hear all of the evidence from all three burglaries at one trial. And that's what makes this case more like the Carriker case, which I discussed a moment ago, where the court under similar circumstances remanded for a new trial. Mr. Lenz, just for clarification, the Carriker case and the Johnson case are both cases that you cited in your brief, correct? Yes. Okay. Yes. Any other questions, Justice Vaughn or Justice Wharton? No, thank you. Okay. Thank you both for your arguments. This matter will be taken under advisement and we will issue a disposition in due course. Thank you. Thank you.